Eden *v.* Lingenfelter.

---

## EDEN *v.* LINGENFELTER.

PRACTICE.—*Jury*.—*Evidence*.—Where the jury, having retired, returned into court and requested to hear a portion of a deposition, it was improper for the court to ask them if they desired "any of the account books," and to offer to send such books to their room, and to permit them to take such books to their room. The better and prevailing practice is not to send the evidence out with the jury except as they carry it in their memory.

SAME.—*Ground for New Trial*.—" Error of law in admitting illegal evidence," or " error of law in excluding competent evidence," is not, when thus stated, sufficiently definite as a cause for a new trial.

EVIDENCE.—*Partnership*.—Entries in the account books of a firm, made prior

to, and at the date of, any transaction in question, and open to inspection of the partners, are *prima facie* evidence against any member of the partnership.

APPEAL from the Marion Common Pleas.

DOWNEY, J.—Lingenfelter purchased of Eden an undivided one-fifth of the lease, buildings, good-will, stock, machinery, and accounts of a planing mill belonging to the firm of Eden, Copeland & Co., at Minneapolis, Minnesota, upon certain representations by him as to the assets and liabilities of the concern, and he brought this action against Eden, alleging that such representations were untrue. The defendant answered, first, a general denial, and, second, payment. Reply to the second paragraph of the answer by a general denial. Trial by jury, verdict for the plaintiff for eleven hundred and forty-four dollars and seventy-one cents. Motion by the defendant for a new trial overruled, and judgment for the plaintiff for the amount of the verdict: The defendant appeals, and assigns as errors the overruling of the motion for a new trial, and also the overruling of a motion made by him in arrest of judgment. We will examine the reasons which were assigned for a new trial.

First. The defendant having objected to the introduction of the books of Eden, Copeland & Co. in evidence, and the court having overruled the objection, and plaintiff's attorneys having asked plaintiff to state the contents of the books from his memorandum, counsel for the defendant remarked, "We have no objection to plaintiff stating his computation from his memoranda, instead of the books, to save time, provided our exception to the evidence is reserved;" whereupon the court remarked, "No, sir, I don't allow any sharp practice of that kind in my court. If you consent, you cannot have an exception." Which language, it is alleged, was irregular, tended to the prejudice of the defendant's cause, and prevented defendant from having a fair trial. We have not examined the record to see whether any bill of exceptions shows that the language imputed to the court was used or not. Conceding that it was used, and

that it was not warranted by the circumstances, it would not, we think, be a sufficient cause for reversing the judgment. We could not infer from it what is inferred by counsel for appellant, that is, that it prevented the defendant from having a fair trial. The jury could hardly have been so easily influenced.

Second. Irregularity of the court in sending to the jury books of account given in evidence over the defendant's objection, which was contrary to law.

Third. Irregularity in sending to the jury room books of account, which had not been read in evidence, over the objection of the defendant, contrary to law.

Fourth. Irregularity of the court in reading to the jury, after the argument had closed and the jury had been charged and had been sent to their room, the depositions of Jesse Copeland and B. F. Copeland.

The bill of exceptions shows that the jury came into court, after they had been out for some time, and desired to see the deposition of Jesse Copeland, to see if there was any fraud. The court read the deposition of Jesse Copeland to the jury over defendant's objection, and to the reading of which the defendant excepted. The court then inquired of the jury, "Is there anything further in the depositions you want?" Juryman: "No sir." Court: "If you will indicate to me what books you want to examine, I will send them with you." Juryman: "Some of the jury want to hear Frank Copeland's deposition." Court: "There is considerable of it; if you will direct me to any part, I will read it." The court then read the deposition, over the objection of the defendant, and he excepted. The court also read the supplemental deposition of the same witness, to which the defendant objected and excepted. Court: "Now, if you wish to take any of the books, indicate them." Juryman: "We might take the ledger and Eden's small book." The ledger and Eden's small book were then given to the jury, over the objection and exception of the defendant.

It is provided in the civil code, that "after the jury have

retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys." 2 G. & H. 203, sec. 331.

Every attorney who has had much practice knows what a critical period it is in the history of a lawsuit, when the jury, after having been out, and being unable to agree, return into court for further instructions as to the law, or information as to the facts of the case. It is then that words are most weighty. In the discharge of its duty then, the court should be more than usually careful.

The jury in this case came into court with no other request, according to the bill of exceptions, than "to see the deposition of Jesse Copeland, to see if there is any fraud." To that extent it was proper for the court to read to them the evidence. But the court did not stop here, but inquired if there was anything further in the depositions which they wanted; and when the juror answered in the negative, the court said, "If you will indicate to me what books you want to examine, I will send them with you." The jury had made no request for the books, but after this inquiry by the court, they concluded to hear another deposition; and after it was read, and the court had said, "Now, if you wish to take any of the books, indicate them," the jury concluded to take "the ledger and Eden's small book."

It seems quite clear that the jury did not go into court for books, and that the idea of taking books to their room was first suggested by the court. It seems to us that this was not proper. Under the statute of 1843, the court could decide what papers the jury should take with them to their room. R. S. 1843, p. 734; *Waltz* v. *Robertson*, 7 Blackf. 499. But no such provision is found in the present statute. The practice almost uniformly prevailing over the State, and the better practice, too, we think, is not to send the evidence

out with the jury, except as they carry it in their memory. This may be inferred, probably, from the section of the code of practice which we have quoted, which provides that the jury shall be brought into court if they disagree as to any part of the testimony, etc.

We think, also, that it is at least doubtful whether these books had been given in evidence before the jury retired. The bill of exceptions does not show that they were read to the jury, or that it was agreed that they should be considered in evidence without having been read.

Fifth. Error of law committed by the court in the admission of illegal, incompetent, and irrelevant testimony over objections of defendant.

Sixth. Error of law in excluding competent, legal, and relevant testimony offered by defendant.

We must regard these two reasons for a new trial as too indefinite to present, either to the court below or to this court, any question for decision. How can we know where to look, in a record of one hundred and sixty pages, for this admitted or excluded testimony? or how shall we recognize it when we have found it?

Seventh. Error of law in refusing to give written instructions, asked by defendant, three, four, and six.

We have examined these instructions, and think that they were properly refused.

Eighth. Error of law in giving instructions one, two, three, four, five, six, eight, and nine.

The first six related to the question of fraud, and seem to us to be correct. The eighth informs the jury that if the books which were given in evidence were kept by the firm of Eden, Copeland & Co., for the purpose of their daily accounts with all persons having dealings with them, and were subject to the inspection of the defendant, as a member of the firm, the entries therein pertaining to matters in controversy will be considered, as to all the entries made up to the 21st day of September, 1867, as correct, unless the contrary has been shown by the evidence. We see no objection

to this. It made the books of the firm *prima facie* evidence against the members as to the matters entered thereon prior to, and at the time of, the transaction in question. Such seems to be the law. Lindley Partnership, 1000.

There is no ninth charge in the record.

Other questions were presented on the motion for a new trial, but as they relate to matters which will not probably arise again, we need not consider them.

The motion in arrest of judgment calls in question the sufficiency of the complaint; but, upon examination of it, we think it is sufficient. Other reasons for arresting the judgment were assigned, but they are not causes for arresting the judgment.

The judgment is reversed, with costs; and the cause remanded, with instructions to grant a new trial.

*J. T. Dye* and *A. C. Harris,* for appellant.

*E. W. Kimball, E. H. Lamme, R. O. Hawkins, J. Hanna,* and *F. Knefler,* for appellee.