Irwin *et al. v.* Smith *et al.*

No. 5047.

IRWIN ET AL. *v.* SMITH ET AL.

NEW TRIAL.—*Practice.*—The overruling of a demurrer to a complaint is not a proper cause for a new trial.

SAME.—*Pleading.*—A motion for a new trial is sufficiently specific, if it clearly directs the court's attention to the points upon which the party claims erroneous rulings were made, and indicates, with reasonable certainty, the particular ruling of which complaint is made.

SAME.—*Causes.*—It is sufficient to assign as a cause for a new trial that the court erred in giving and refusing instructions, without specifically naming the particular instructions.

INSTRUCTIONS.—*Bill of Exceptions.*—*Practice.*—Instructions can only be made part of a bill of exceptions, and thereby brought into a record, by copying the same into the body of the bill, or by appropriately designating the instructions, and at the proper place in the bill writing the words, "here insert." It is not sufficient to merely attach the instructions to the bill of exceptions.

CONTRACT.— *Construction.* — *Grading Railroad.*—For construction of a written contract for the grading of a railroad-bed, including specifications for grubbing, excavations, etc., see opinion.

From the Marion Superior Court.

*J. Buchanan* and *C. D. Whitehead*, for appellants.

*C. Baker*, *O. B. Hord*, *T. A. Hendricks*, *J. E. McDonald* and *J. M. Butler*, for appellees.

SCOTT, J.—The appellants sued the appellees for a balance due for work and labor performed in constructing the grade for the Indianapolis, Bloomington and Western Railway. Issues and trial in the court below at special term resulted in a verdict for the appellants in the sum of $11,549.28. The appellees moved for a new trial. The motion was overruled and exception reserved. Judgment was rendered at special term, and the appellees appealed to general term, where the judgment of special term was reversed, and from this judgment of reversal this appeal is prosecuted. The judgment of general term may be found in 1 Wilson Rep. 544.

The only questions presented to this court are those which

Irwin *et al. v.* Smith *et al.*

arise out of the overruling of the motion for a new trial. In the motion for a new trial the appellees assigned the following causes:

1. The court erred in overruling defendants' demurrer to plaintiffs' complaint;

2. The verdict and special findings are not sustained by sufficient evidence;

3. The verdict and special findings are contrary to the evidence;

4. The verdict and special findings are contrary to law;

5. For error of law occurring at the trial, in this, to wit:

(1.) The court erred in refusing to permit the defendants to introduce competent, relevant and material evidence offered by defendants;

(2.) The court erred in permitting the plaintiffs, over the objection and exception of defendants, to introduce incompetent, irrelevant, immaterial and illegal evidence to the jury;

(3.) The court erred in giving the jury the instructions given by the court on its own motion, which instructions were at the time excepted to by defendants;

(4.) The court erred in modifying and changing certain instructions asked by the defendants, to which modifications and changes of said instructions the defendants at the time excepted, as is shown by bill of exceptions;

(5.) The court erred in refusing to give instructions asked by the defendants to be given to the jury, the refusal to give which said instructions was at the time excepted to by defendants;

(6.) The court erred in giving contradictory instructions to the jury.

The overruling of a demurrer to a complaint is not a proper cause for a new trial.

The fifth cause for a new trial, together with the various subdivisions, presents no question for this court, nor did it

present any question to the court below, either at special or general term. *Waggoner* v. *Liston*, 37 Ind. 357 ; *Wright* v. *Potter*, 38 Ind. 61 ; *Eden* v. *Lingenfelter*, 39 Ind. 19 ; *Harding* v. *Whitney*, 40 Ind. 379 ; *Alley* v. *Gavin*, 40 Ind. 446 ; *Marley* v. *Noblett*, 42 Ind. 85 ; *Musselman* v. *Musselman*, 44 Ind. 106 ; *Douglass* v. *Blankenship*, 50 Ind. 160 ; *Rogers* v. *Rogers*, 46 Ind. 1 ; *Grant* v. *Westfall*, 57 Ind. 121 ; *Alexander* v. *The North Western Christian University*, 57 Ind. 466 ; *Tyler* v. *Bowlus*, 54 Ind. 333 ; *Watt* v. *DeHaven*, 55 Ind. 128 ; *Vawter* v. *Gilliland*, 55 Ind. 278 ; *Wilson* v. *Vance*, 55 Ind. 584 ; *Patterson* v. *The Indianapolis and Brownsburgh Plank Road Co.*, 56 Ind. 20 ; *Schlicht* v. *The State*, 56 Ind. 173.

The evidence is in the record, and the causes assigned for a new trial were sufficient to present the question whether the verdict of the jury was right upon the evidence.

The work was done in pursuance of a written contract, and the reversal or affirmance of the judgment depends upon the meaning and interpretation of this contract. We set out that portion of the contract which will present the ground on which the case must be decided :

"CLEARING AND GRUBBING.

"The ground set apart for the railroad is to be cleared to the boundary line of the company's land, as the same may be designated by the engineer," etc.

"GRADING.

"The road-bed will be graded for a single track (except at points where sidings or turnouts may be required), and will be generally 14 feet in width in embankments, and 20 feet in width in excavations, with slopes on the sides of one and one-half base to one foot perpendicular. * * *

"All materials will be measured in excavation only, whether taken from cuts upon the line, or from ditches and

borrowing pits to form embankments; and no allowance of haul will be made, unless the material excavated is required to be taken beyond the limits of the section upon which it is found.     *     *

"The party of the first part (the appellants) will graduate and carefully prepare in a good and workman-like manner, for the reception of the superstructure on railways, all that part of the line of the Indianapolis, Bloomington and Western Railway included in sections," etc., "including the grubbing and clearing on all the above named sections," etc., "in the manner and on the conditions hereinafter mentioned, and according to the specifications hereunto annexed. The earth shall be excavated and moved, and embankments raised, in such manner as to make a uniform and regular surface, conforming to the inclination or level indicated by the level and field-notes of the said engineer; that the excavation shall be twenty (20) feet wide on the graduated line or surface of the road, with turnouts at such points as the engineer shall direct, and a side drain of such slope, and dimensions as may be directed by the engineer, shall be formed on each side of the road; that the earth from the excavations shall form the embankments as far as the engineer of said railway shall direct, and the surplus earth shall be distributed so as to widen out the embankments uniformly, or formed into spoil banks at such places as the engineer of said railway shall direct, with evenness and regularity, with a suitable descent to carry off the water from the railroad; and when directed by the engineer, convenient drains shall be constructed through the spoil banks to carry off the water.     *     *     *

"Where the excavations do not furnish materials sufficient to make the embankments, the deficiency shall be made up by widening the excavations uniformly, or by borrowing from such points as the engineer shall designate, which shall be estimated and allowed as excavation.     *     *     *

"That excavations and embankments for road crossings shall be made of such dimensions and form as shall be designated by the engineer, and estimated and paid for at the same price per yard as other work on these sections.    *    *

"And the said party of the second part does hereby covenant and agree to pay to the said party of the first part, in manner hereinafter mentioned, for the work agreed by this contract to be done, as follows:

"For earth excavation and grubbing and clearing, 15 cents per cubic yard; and for embankments, including the grubbing and clearing, 24 cents per cubic yard," etc.

We think it clear from this contract that all excavations, whether from the widening of the cuts or from ditches or borrowing pits, must be treated precisely alike, and both must be estimated and allowed, if either the one or the other is; for both kinds of excavation—that taken from widening the main road-bed, and that taken from borrowing pits rest upon the same words in the contract for estimation and allowance.

That the earth taken from the widening of the main road-bed, and put into the embankment, was to be paid for at the rate of 39 cents per cubic yard, is conceded by counsel, and that it was so estimated, allowed and paid for is shown by the evidence and special findings of the jury; and as the excavations taken from borrowing pits were to have been estimated and allowed in the same way, and under the same clause of the contract, we are compelled to hold that the appellants were entitled to be paid for these excavations the same price as if they had been taken from the widening of the cuts in the main line of the road.

From the special findings of the jury, which, in our opinion, were entirely justified by the evidence, we are informed that the appellants, under their contract with appellees, excavated 235,645 cubic yards of earth; that 206,708 cubic yards were put into the embankment, which at 39 cents per

Irwin *et al. v.* Smith *et al.*

| | | |
|---|---|---|
| cubic yard, amount to the sum of | | $80,616.12 |
| That the surplus excavation, 28,937 cubic yards, at 15 cents per cubic yard, amounts to | - | $4,340.55 |
| Add items conceded - - - - - | - | 791.60 |
| Total - - - - - - | - | $85,748.27 |
| Deduct payments as found by the jury | - | 73,747.53 |
| Balance - - - - - - | - | $12,000.74 |
| Verdict - - - - - - - | - | $11,549.28 |

It is the opinion of the court that the verdict is fully supported by the evidence, and that the court in general term erred in reversing the judgment at special term.

The judgment of the general term is reversed, at the costs of appellees, with instructions to the court in general term to affirm the judgment at special term.

## On Petition for a Rehearing.

Elliott, J.—In the opinion of the court, delivered by Scott, J., it was said that the motion for a new trial did not present any question upon the instructions. The language of the opinion upon this point is as follows: "The fifth cause for a new trial, together with the various subdivisions, presents no question for this court, nor did it present any question to the court below, either at special or general term." The cause for a new trial, to which reference is made in the preceding quotation, was in appellees' motion thus stated: "5. For errors of law occurring at the trial, in this, to wit: The court erred in giving the jury the instructions given by the court on its own motion, which instructions were at the time excepted to by the defendants; The court erred in modifying and changing certain instructions asked by the defendants, to which modification and changes of said instructions the defendant at the time excepted, as is shown by bill of exceptions; the court erred in refusing to

Irwin *et al. v.* Smith *et al.*

give instructions asked by defendants, the refusal to give which said instructions was excepted to by the defendants at the time. The court erred in giving contradictory instructions to the jury.'' Each of these subdivisions is appropriately numbered. We think the doctrine declared in that part of the opinion which we have quoted is in conflict with many cases, and is erroneous.

A motion for a new trial is sufficiently specific, if it clearly directs the court's attention to the points upon which the party claims erroneous rulings were made, and indicates, with reasonable certainty, the particular ruling of which complaint is made. In the cases cited below, it was expressly held, overruling some earlier cases, that it was sufficient to assign, as a cause for a new trial, that the court erred in giving and refusing instructions, without specifically naming the particular instructions. *Bartholomew* v. *Langsdale*, 35 Ind. 278; *Dawson* v. *Coffman*, 28 Ind. 220; *Waggoner* v. *Liston*, 37 Ind. 357. These cases have since been followed, and we think they express the correct rule.

While we are clear that the opinion must be modified in the particular indicated, we do not think the petition for a rehearing ought to be granted. The granting of the petition would avail nothing, for, in our opinion, the instructions are not a part of the record. They are not incorporated into the record in the manner required by law. The statute provides, that ''It shall not be necessary to copy a written instrument or any documentary evidence into a bill of exceptions; but it shall be sufficient to refer to such evidence, if its appropriate place be designated by the words, 'here insert.' '' It has often been held that instruments are not to be deemed part of the record unless incorporated into the bill of exceptions, either by copying at length in the body of the bill, or by adopting the course pointed out by the statute. *Kesler* v. *Myers*, 41 Ind. 543; *Sidener* v. *Davis*, 69 Ind. 336; *The Aurora, etc., Co.* v. *Johnson*, 46 Ind. 315;

*The State, ex rel.,* v. *The Peru, etc., R. R. Co.,* 44 Ind.
350 ; *Burdick* v. *Hunt,* 43 Ind. 381 ; *Harman* v. *The State,*
22 Ind. 331.

We could not, without overthrowing many cases and disturbing a long settled rule of practice, hold that instructions may be brought into the record, which are neither copied in the body of the bill nor appropriately designated, nor the proper place for their insertion indicated, by the words "here insert," by being merely attached to the bill of exceptions.

The law as it stood prior to the adoption of the code required that the instrument should be copied into the body of the bill. This doctrine was declared as early as *Huff* v. *Gilbert,* 4 Blackf. 19. In *Spears* v. *Clark,* 6 Blackf. 167, the bill contained the words, "insert said note and said endorsements," and it was held not to be sufficient. In *The Board, etc.,* v. *Embree,* 7 Blackf. 461, it was held that a judge ought not to sign a bill which contains a provision for the insertion of papers, but that they should be copied into the bill. In *Doe* v. *Makepeace,* 8 Blackf. 575, two of the above named cases were referred to as being correctly decided. In *Mills* v. *Simmonds,* 10 Ind. 464, it is held that, under the practice prevailing prior to the adoption of the code, the instruments could only be made part of the record by being copied into the bill. The code provides a more liberal rule, but it does not relax the old rule any farther than to allow instruments to be copied into the record by the clerk in cases where they are properly referred to, and the proper place for their insertion designated by the words "here insert."

The right to have instruments embodied in the bill without being actually copied therein, before the bill is signed, depends entirely upon this statutory provision. If it were not for this provision, they could be brought into the record (when the attempt to get them into the record is by way of a bill of exceptions) only by being copied at full length into the bill before the signature of the judge was affixed. The

statute expressly provides the method in which instruments. may be carried into the record without being actually copied, and we have no authority to declare that it may be done in any other. There is no room for construction, for the language of the statute is plain. The instrument must either be copied, or it must be designated, and the place for its insertion indicated by the words "here insert."

There are, at least, two substantial reasons for such a rule as that declared by statute. The first is, that it assures a correct record, prevents the mere entries of the clerk from forming an essential part of the record, and accurately exhibits the rulings of the court and the grounds upon which such rulings were based. If attorneys were left free to choose a method for themselves in each particular case, there would be no general rule by which the accuracy of the transcript filed in this court could be tested. The second reason is, that such a rule secures uniformity of practice, prevents confusion, and places each instrument in its appropriate place, and prevents instruments and documents from appearing as exhibits in awkward and out-of-the-way places. Unless there is some uniform, fixed general rule upon this subject, great confusion would arise, and courts would be perplexed by questions in each particular case, as to whether instructions or other written instruments were in the record.

A general, uniform rule, applying not to some but to all cases, will relieve from embarrassment, simplify the procedure, lighten the labor of court and counsel, and secure attention to the real merits of the controversy.

There is no hardship in requiring strict compliance with the provisions of the code, for, if it is not desirable to copy the instructions into the body of the bill, all that need be done is to appropriately designate the instructions, and at the proper place write the words, "here insert." A simpler method, and one imposing less labor upon the attorney, could not well be devised. Simple as it is, we are fully sat-

isfied, upon careful deliberation, that it is the only one which will secure accurate, methodical, concise and orderly records.

We are now, of course, speaking only of cases where instructions are attempted to be brought into the record by means of a bill of exceptions, and nothing herein said is intended to apply to any of the other methods of making instructions a part of the record.

Petition overruled.