(LOCAL LAW.)

## HANDLY's Lessee v. ANTHONY et al.

The boundary of the State of Kentucky extends only to low water mark on the western or northwestern side of the river Ohio; and does not include a peninsula, or island, on the western or northwestern bank, separated from the main land by a channel or bayou, which is filled with water only when the river rises above its banks, and is, at other times, dry.

When a river is the boundary between two nations or states, if the original property is in neither, and there be no convention respecting it, each holds to the middle of the stream. But when, as in this

case, one State (Virginia) is the original proprietor, and grants the territory on one side only, it retains the river within its own domain, and the newly erected State extends to the river only, and the low water mark is its boundary.

Handly's
Lessee
v.
Anthony.

THIS cause was argued by the *Attorney-General* for the plaintiff, and by Mr. *B. Hardin* for the defendants in error.

*March 4th.*

Mr. Chief Justice MARSHALL delivered the opinion of the Court.    This was an ejectment brought in the Circuit Court of the United States for the District of Kentucky, to recover land which the plaintiff claims under a grant from the State of Kentucky, and which the defendants hold under a grant from the United States, as being part of Indiana.    The title depends upon the question whether the lands lie in the State of Kentucky, or in the State of Indiana.

*March 14th*

At this place, as appears from the plat and surveyor's certificate, the Ohio turns its course, and runs southward for a considerable distance, and then takes a northern direction, until it approaches within less than three miles, as appears from the plat, of the place where its southern course commences. A small distance above the narrowest part of the neck of land which is thus formed, a channel, or what is commonly termed in that country a bayou, makes out of the Ohio, and enters the same river a small distance below the place where it resumes its westward course.    This channel, or bayou, is about nine miles by its meanders, three miles and a half in a straight line, and from four to five poles wide. The circuit made by the river appears to be from

fifteen to twenty miles. About mid-way of the channel two branches empty into it from the north-west, between six and seven hundred yards from each other; the one of which runs along the channel at low water, eastward, and the other westward, until they both enter the main river. Between them is ground over which the waters of the Ohio do not pass until the river has risen about ten feet above its lowest state. It rises from forty to fifty feet, and all the testimony proves that this channel is made by the waters of the river, not of the creeks which empty into it. The people who inhabit this penin-sula, or island, have always paid taxes to Indiana, voted in Indiana, and been considered as within its jurisdiction, both while it was a Territory, and since it has become a State. The jurisdiction of Ken-tucky has never been extended over them.

The question whether the lands in controversy lie within the State of Kentucky or of Indiana, de-pends chiefly on the land law of Virginia, and on the cession made by that State to the United States.

Both Kentucky and Indiana were supposed to be comprehended within the charter of Virginia at the commencement of the war of our revolution. At an early period of that war, the question whether the immense tracts of unsettled country which lay with-in the charters of particular States, ought to be con-sidered as the property of those States, or as an ac-quisition made by the arms of all, for the benefit of all, convulsed our confederacy, and threatened its existence. It was probably with a view to this question that Virginia, in 1779, when she opened her

land office, prohibited the location or entry of any land " on the northwest side of the river Ohio."

In September, 1780, Congress passed a resolution, recommending " to the several States, having claims to waste and unappropriated lands in the western country, a liberal cession to the United States, of a portion of their respective claims, for the common benefit of the Union." And in January, 1781, the Commonwealth of Virginia yielded to the United States "all right, title, and claim, which the said Commonwealth had to the territory northwest of the river Ohio, subject to the conditions annexed to the said act of cession." One of these conditions is, " that the ceded territory shall be laid out and formed into States." Congress accepted this cession, but proposed some small variation in the conditions, which was acceded to; and in 1783 Virginia passed her act of confirmation, giving authority to her members in Congress to execute a deed of conveyance.

It was intended then by Virginia, when she made this cession to the United States, and most probably when she opened her land office, that the great river Ohio should constitute a boundary between the States which might be formed on its opposite banks. This intention ought never to be disregarded in construing this cession.

At the trial, the counsel for the defendants moved the Court to instruct the jury,

1. That the lessor of the plaintiff cannot recover, the land in contest not being at any time subject to the laws of Kentucky, but to those of Indiana.

1820.

Handly's
Lessee
v.
Anthony.

2. Because the evidence does not show that the land is within the limits of the State of Kentucky.

The Court instructed the jury that, admitting that the western and northwestern boundary of Kentucky included all the islands of the Ohio, and extended to the western and northwestern bank of the Ohio, yet no land could be called an island of that river, unless it was surrounded by the waters of the Ohio at low water mark; and to low water mark only, on the western or northwestern side of the Ohio, did the boundaries of the State of Kentucky extend.

The counsel for the plaintiff excepted to this opinion, and then moved the Court to instruct the jury, that if they found the land in question was covered by the grant to the lessor of the plaintiff, and that it was surrounded by a regular water channel of the Ohio on the northwestern side, and was, at the middle and usual state of the water in the Ohio, embraced and surrounded by the water of the Ohio, flowing in said channel, it was an island, and within the State of Kentucky. But the Court refused to give the instructions aforesaid, but instructed the jury, that if the water did not run through said channel at low water, but left part thereof dry, it was not an island, nor within the State of Kentucky.

To this opinion, also, the counsel for the plaintiff excepted. The jury found a verdict for the defendants on which the Court rendered judgment; which judgment is now before this Court on a writ of error.

The two exceptions present substantially the same questions to the Court, and may therefore be con-

sidered together.   They are, whether land is properly denominated an island of the Ohio, unless it be surrounded with the water of the river, when low? and whether Kentucky was bounded on the west and northwest by the low water mark of the river, or at its middle state? or, in other words, whether the State of Indiana extends to low water mark, or stops at the line reached by the river when at its medium height?

1820.

Handly's
Lessee
v.
Anthony.

In pursuing this inquiry, we must recollect that it is not the bank of the river, but the river itself, at which the cession of Virginia commences.   She conveys to Congress all her right to the territory "situate, lying, and being, to the northwest of the river Ohio."   And this territory, according to express stipulation, is to be laid off into independent States. These States, then, are to have the river itself, wherever that may be, for their boundary.   This is a natural boundary, and in establishing it, Virginia must have had in view the convenience of the future population of the country.

When a great river is the boundary between two nations or states, if the original property is in neither, and there be no convention respecting it, each holds to the middle of the stream.   But when, as in this case, one State is the original proprietor, and grants the territory on one side only, it retains the river within its own domain, and the newly-created State extends to the river only.   The river, however, is its boundary.

"In case of doubt," says Vattel, "every country lying upon a river, is presumed to have no other

limits but the river itself; because nothing is more natural than to take a river for a boundary, when a state is established on its borders; and wherever there is a doubt, that is always to be presumed which is most natural and most probable."

" If," says the same author, " the country which borders on a river, has no other limits than the river itself, it is in the number of territories that have natural or indetermined limits, and it enjoys the right of alluvion."[a]

Any gradual accretion of land, then, on the Indiana side of the Ohio, would belong to Indiana, and it is not very easy to distinguish between land thus formed, and land formed by the receding of the water.

If, instead of an annual and somewhat irregular rising and falling of the river, it was a daily and almost regular ebbing and flowing of the tide, it would not be doubted that a country bounded by the river would extend to low water mark. This rule has been established by the common consent of mankind. It is founded on common convenience. Even when a State retains its dominion over a river which constitutes the boundary between itself and another State, it would be extremely inconvenient to extend its dominion over the land on the other side, which was left bare by the receding of the water. And this inconvenience is not less where the rising and falling is annual, than where it is diurnal. Wherever the river is a boundary between States, it is the main, the permanent river, which constitutes that boundary; and the mind will find

a L. 1. c. 22. § 268.

1820.

Handly's
Lessee
v.
Anthony.

itself embarrassed with insurmountable difficulty in attempting to draw any other line than the low water mark.

When the State of Virginia made the Ohio the boundary of States, she must have intended the great river Ohio, not a narrow bayou into which its waters occasionally run. All the inconvenience which would result from attaching a narrow strip of country lying on the northwest side of that noble river to the States on its southeastern side, would result from attaching to Kentucky, the State on its southeastern border, a body of land lying northwest of the real river, and divided from the main land only by a narrow channel, through the whole of which the waters of the river do not pass, until they rise ten feet above the low water mark.

The opinions given by the Court must be considered in reference to the case in which they were given. The sole question in the cause respected the boundary of Kentucky and Indiana; and the title depended entirely upon that question. The definition of an island which the Court was requested to give, was either an abstract proposition, which it was unnecessary to answer, or one which was to be answered according to its bearing on the facts in the cause. The definition of an island was only material, so far as that definition might aid in fixing the boundary of Kentucky. In the opinion given by the Court on the motion made by the counsel for the defendants, they say, that " no land can be called an island of the Ohio, unless it be surrounded by the waters of that river at low water mark." We

1820.

Handly's
Lessee
v.
Anthony.

are not satisfied that this definition is incorrect, as respected the subject before the Court; but it is rendered unimportant, by the subsequent member of the sentence, in which they say, " that to low water mark only, on the western and northwestern side of the Ohio, does the State of Kentucky extend."

So, in the motion made by the counsel for the plaintiff, the Court was requested to say, that if the waters of the Ohio flowed in the channel, in its middle and usual state, it was not only an island, but " within the State of Kentucky."

If the land was not within the State of Kentucky, the Court could not give the direction which was requested. The Court gave an instruction substantially the same with that which had been given on the motion of the defendant's counsel.

If it be true, that the river Ohio, not its ordinary bank, is the boundary of Indiana, the limits of that State can be determined only by the river itself. The same tract of land cannot be sometimes in Kentucky, and sometimes in Indiana, according to the rise and fall of the river. It must be always in the one State, or the other.

There would be little difficulty in deciding, that in any case other than land which was sometimes an island, the State of Indiana would extend to low water mark. Is there any safe and secure principle, on which we can apply a different rule to land which is sometimes, though not always, surrounded by water?

So far as respects the great purposes for which the river was taken as the boundary, the two cases

seem to be within the same reason, and to require
the same rule. It would be as inconvenient to the
people inhabiting this neck of land, separated from
Indiana only by a bayou or ravine, sometimes dry for
six or seven hundred yards of its extent, but separa-
ted from Kentucky by the great river Ohio, to form
a part of the last mentioned State, as it would for
the inhabitants of a strip of land along the whole
extent of the Ohio, to form a part of the State on
the opposite shore. Neither the one nor the other
can be considered as intended by the deed of cession.

If a river, subject to tides, constituted the bounda-
ry of a State, and at flood the waters of the river
flowed through a narrow channel, round an exten-
sive body of land, but receded from that channel at
ebb, so as to leave the land it surrounded at high
water, connected with the main body of the coun-
try; this portion of territory would scarcely be con-
sidered as belonging to the State on the opposite side
of the river, although that State should have the
property of the river. The principle that a country
bounded by a river extends to low water mark, a
principle so natural, and of such obvious conve-
nience as to have been generally adopted, would,
we think, apply to that case. We perceive no suf-
ficient reason why it should not apply to this.

The case is certainly not without its difficulties;
but in great questions which concern the boundaries
of States, where great natural boundaries are estab-
lished in general terms, with a view to public conve-
nience, and the avoidance of controversy, we think
the great object, where it can be distinctly perceived,

1820.

Handly's
Lessee
v.
Anthony.

ought not to be defeated by those technical perplexities which may sometimes influence contracts between individuals. The State of Virginia intended to make the great river Ohio, throughout its extent, the boundary between the territory ceded to the United States and herself. When that part of Virginia, which is now Kentucky, became a separate State, the river was the boundary between the new States erected by Congress in the ceded territory, and Kentucky. Those principles and considerations which produced the boundary, ought to preserve it. They seem to us to require, that Kentucky should not pass the main river, and possess herself of lands lying on the opposite side, although they should, for a considerable portion of the year, be surrounded by the waters of the river flowing into a narrow channel.

It is a fact of no inconsiderable importance in this case, that the inhabitants of this land have uniformly considered themselves, and have been uniformly considered, both by Kentucky and Indiana, as belonging to the last mentioned State. No diversity of opinion appears to have existed on this point. The water on the north western side of the land in controversy, seems not to have been spoken of as a part of the river, but as a bayou. The people of the vicinage, who viewed the river in all its changes, seem not to have considered this land as being an island of the Ohio, and as a part of Kentucky, but as lying on the north western side of the Ohio, and being a part of Indiana.

The compact with Virginia, under which Kentucky became a State, stipulates, that the navigation of, and jurisdiction over, the river, shall be concurrent between the new States, and the States which may possess the opposite *shores* of the said river. This term seems to be a repetition of the idea under which the cession was made. The shores of a river border on the water's edge.

Judgment affirmed, with costs.