Scott, J.
The original action was brought by the defendant in error, under the statute “ requiring compensation for causing death by wrongful act, neglect or default.” Swan’s Rev. Stat. 707. His intestate was a passenger on board a steamboat belonging to the plaintiffs in error, which was navigating the Ohio river from Wheeling to a point thirty miles below; and in attempting to land him at Bellaire, in Belmont county, he was drowned, through the wrongful act, neglect, and default of the plaintiffs in error, as the petition below avers.
The original petition in the court of common pleas stated that, “ at the time said deceased was drowned, the said steamboat was in the channel of said river, and near the middle thereof.” But, in the district court, into which the case came by appeal, the plaintiff b'elow obtained leave, by consent of defendants, to amend his petition, so as to make the foregoing averment read thus: “ That at the time said deceased was drowned, the said steamboat was in said river, inside of low-water mark, on the Ohio shore, within the county of Belmont, and State of Ohio.”
The record states that this amendment was accordingly made, and that “ the defendants, on leave, and by consent of the plaintiffs, filed an amended answer to said petition. The bill of exceptions shows that the cause came on to be tried upon the issues made by the amended petition of the plaintiff and the answer of the defendants thereto.
It is shown by the bill of exceptions that, “ there being evidence to the jury tending to prove that the said James G-. Hubbard, deceased, fell from the said boat into the said Ohio River, on the Virginia side of the bottom of the *245 natural bank of the said river,” the counsel for the defendants thereupon asked the court to charge the jury, that “ if they were satisfied from the evidence that .the deceased was drowned on the Virginia side of the top of the bank of the river, their verdict should be for the defendant; and, 2d, that if they were satisfied from the evidence that the said Hubbard was drowned on the Virginia side of where the natural bank of the river is, though on or over a bar that has been formed by the action of the water, their verdict should be for the defendants.”
Each of these instructions the district court declined to give; and, instead thereof, charged the jury to the effect, “ that if the said Hubbard was drowned on the Virginia side of ordinary or common low-water mark, their verdict should be for the defendants.”
The jury found for the plaintiff below. The defendants moved for a new trial, and, their motion having been overruled, judgment was entered on the verdict.
The errors assigned are predicated on the supposed mistake of the law of the case by the district court, in refusing to charge the jury as requested by the defendant below, and in overruling a motion for a new trial.
As the right of action in this case is given solely by statute, and as this statute can have no extra-territorial force, it follows that unless the cause of action occured within this state, the defendants were entitled to a verdict.
If, then, “the natural bank,” or “the bottom of the natural bank ” of the Ohio River, on its northwest side, is the territorial limit of the State of Ohio, the district court erred in refusing to give the instructions asked for; but if otherwise, not. At least, it is clear that the refusal to charge as requested, and the instructions actually given, furnish no just cause of complaint to the plaintiff in error, if the territorial limits of Ohio extend as far as to ordinary low-water mark on the Ohio side of the river.
It-does not become necessary, in this case, to determine whether the middle of the Ohio River, “ the f.lum medium *246 aquae” does or does not constitute the boundary line between the states of Virginia and Ohio. Eor all the purposes of this case, it may be assumed that Virginia was the original, undisputed owner of the territory on both sides of the river, and still retains all that she did not part with by her deed of cession in 1784. By that deed, she ceded to the United States “ all right, title and claim, as well of soil as jurisdiction, which the said commonwealth hath to the territory within the limits of the Virginia charter, situate, lying and being to the northwest of the river Ohio.” (1 U. S. L. 474.) The object, and one of the conditions of the cession, was that the ceded territory should be laid out and formed into states. In the case of Handly’s Lessee v. Anthony, the supreme court of the United States, proceeding on the assumption that Virginia was the original proprietor of both sides of the river, was called upon to give a construction to this deed of cession, and determine the boundary line which it establishes for the states bordering on the river. Chief Justice Marshall, in that case, states the general principle thus: “ "When a great river is the boundary between two nations or states, if the original property is in neither, and there be no convention respecting it, each holds to the middle of the stream. But when, as in this case, one state is the original proprietor, and grants the territory on one side only, it retains the river within its own domain, and the newly created state extends to the river only. The river, however, is its boundary.” 5 Wheat. Rep. 374. The court further say in this case: “ Wherever the river is a boundary between states, it is the main, the permanent river, which constitutes that boundary, and the mind will find itself embarrassed with insurmountable difficulty in attempting to draw any other line than the low-water mark.” And looking to the intention of Virginia in this cession, to the fact that she contemplated the future existence of independent states on the northwest side of the river, which, in the language of her compact with Kentucky, in 1789, *247 should “ possess the opposite shores of the river,” and that she must have had in view and intended the reasonable convenience of the future population of the new states; and looking to the natural character of the boundary furnished by the river itself, it was held in that case, that the boundary line, contemplated in the deed of cession, is that of low-water mark on the northwest side of the river.
This decision has been acquiesced in by the courts of Virginia. In the case of Commonwealth v. Garner et al., 3 Graft. Rep. 655, a majority of the general court of that state, upon a very full examination of the subject, recognized the authority and propriety of the decision in Ilandly’s Lessee v. Anthony.
And the construction thus given to the Virginia deed of cession has been uniformly sanctioned and affirmed by the courts of this state. In Lessee of McCullock v. Aten, 2 Ohio Rep. 308, the court say: “ The state is bounded by the Ohio River ; but it can scarcely be supposed that' the beach, below the break of the bank, is not within her jurisdiction. In the case of llandly’s Lessee v. Anthony, this doctrine is distinctly recognized by the supreme court of the United States, as being a rule of boundary. And it is one to which this court have always adhered.” And in Benner’s Lessee v. Platter et al., 6 Ohio Rep. 505, it is said: “ The Ohio is a navigable river; it is moreover the boundary of state jurisdiction and sovereignty, and could only be a proper boundary for such purpose whilst each state was limited to its own side of the water.”
And in Lessee of Blanchard v. Porter et al., 11 Ohio Rep. 138, it was held, that lands on the Ohio side of the river, lying between high and low-water mark, are not common to the public as a part of the river, but belong to the adjacent proprietor whose land bounds on the river.
The construction given to the Virginia deed of cession by the supreme court of the United States, having been thus acquiesced in and acted on by the courts, both of Virginia and Ohio, may be regarded as decisive of the *248 question. Indeed, such, would seem to be the construction which Virginia herself has always given to that instrument. She stipulated, in the compact by which Kentucky was enabled to become a separate state, for concurrent jurisdiction on this great river, upon the part of the states which should possess the opposite shores; and as the shores of a river extend to the water’s edge, and include the land between high and low-water mark, it would seem clear that she did not regard her tenitorial limits a's including the opposite shores, or any land west of low-water mark on the western side of the river.
And her right to the navigation of the river, and her concurrent juiisdiction over it, being unquestioned, it may well be asked, for what reasonable purpose could she have intended to retain dominion over a strip of land between the water’s edge and the adjoining states ? It would be a title productive of no practical benefit to herself, and yet subjecting the population on the northwest side of the river to the most serious and embarrassing inconvenience. The liberal and patriotic spirit which dictated the cession is itself sufficient evidence that she did not so intend. In point of fact, dominion has never been exercised by Virginia on this side of the river, since her deed of cession, but has uniformly been exercised by this state, to the line of low-water, during the whole period of her existence, and the question should nov| be regarded as settled.
"We have no hesitation in saying, that the district court did not err in refusing to give the instructions asked for; and of the instructions actually given, the plaintiff in error has no cause to complain.
It is claimed in argument, that the petition of the plaintiff below does not appear from the record to have been in fact amended in the district court, and that without such amendment it was error to give judgment for the plaintiff. It is true, that the petition, as amended, is not copied into the transcript, but the record affirms the amendment was made by consent of defendants; it states with *249 precision in what the amendment consisted; it contains in full the answer of the defendants thereto; and the hill of exceptions shows that the cause was submitted to the jury upon the issues made by the amended petition and the answer thereto. The court charged the jury that their verdict should be for the defendants, if they found that Hubbard was drowned on the Virginia side of ordinary low-water mark. So that, it is very evident that both court and counsel regarded the amendment as being made, and that the issue presented by the amended pleadings was in fact submitted to the jury. Besides, this is not assigned for error.
And for these reasons, we think no injustice is done to the plaintiffs in error by our declining to notice the objection farther.

Judgment of the district court affirmed.

Swan, Brinkerhobb and Suture, JJ., concurred.