## S. SPEARS *v.* THE STATE.

1. TERRITORIAL JURISDICTION OF TEXAS. — Inasmuch as the United States and Spain, by the treaty of 1819, adopted Red River as a conterminous boundary, without designating either of its banks, it must, under the general rule, be held that the channel or middle of the river was the line intended; whence it follows that the jurisdiction of Texas extends to that line at least.

2. PENALTY. — Misdirection of the jury as to the penalty of the offence is material error, though not excepted to in the court below.

3. PURSUING A TAXABLE OCCUPATION WITHOUT LICENSE is punishable by fine not less than the taxes due nor more than double their amount. When one factor in the penalty is a county occupation-tax, not fixed by general law, but levied by the County Commissioners, the amount of such a levy is not a matter of judicial knowledge, but should be alleged and proved, for the purpose of enabling the jury to assess the fine within the limits prescribed by law, — as, for instance, in prosecutions for retailing liquors without license.

APPEAL from the County Court of Lamar. Tried below before the Hon. W. S. MOORE, County Judge.

The commercial enterprise of the appellant embraced the Indian Territory as well as Texas, and in floating it on the bosom of Red River, in the compass of a " trading-boat," he usually anchored his argosy to a sand-bar in the stream, and ministered impartially to the denizens of either realm, so long as the river deported itself with its accustomed sobriety. Occasionally, however, the river would also get " upon a bender," and drive him to a choice of nationalities ; and then he displayed his attachment to Texas by a cable connecting with her shore. Among the commodities dispensed from his emporium was whiskey, in any quantities ; and this, it seems, attracted the attention of the legal authorities of the circumjacent region. The record fails to disclose any flaw in his whiskey ; but somehow the proof failed to satisfy either the tax-collector *in limine*, or the court and jury on the final trial.

*J. C. Easton*, for the appellant. The court erred in its charge, on the question of the boundary of the State, and

particularly so as to the boundary on Red River. The several treaties made between the United States and Spain, Mexico, and Texas define the boundary of Texas, except where it has been changed by law. See Pasc. Dig., arts. 438, 442, 444.

None of these changes has in any way interfered with the boundary of Texas on Red River. That line, whereever it may be, is where these treaties fixed it, and it cannot be extended or contracted by any law of this State. The general rule of international law would fix the line at the middle of the streams or rivers, unless a treaty or prescription otherwise provides. Bishop's Cr. Law, sect. 108.

The most important question in this case is the territorial limits of Texas on Red River. Where does her jurisdiction stop? Is it the centre of Red River? If so, the treaties referred to have failed to so define it. These treaties tell us that the line is to run from where the 32d parallel of north latitude crosses the Sabine River due north to Red River; thence up the same to the 100th meridian of west longitude; thence north, crossing said river, etc. Now, if crossing a stream or crossing a lake means halfway across, or from the centre across, then the boundary may be as contended for by the State; but the common and ordinary rule of our language does not warrant such a construction.

Again, it is provided in the treaties with Spain and Mexico that all the islands in Red River shall belong to the United States. See U. S. Rev. Stats. & Treat. 713, 495. And when the United States ceded to the Indians what is now known as the Indian Territory, that boundary was defined as the north bank of Red River; and if the Texas line goes to the middle of the river, then onehalf of that stream and its islands belong still to the United States. The Indian tribes have no control over any part of the river.

Under all the treaties from 1819 to 1838, a commission

was provided for to run and mark this line; but if it was ever done I can find no record of it. The question of our northern boundary has never been fully and fairly settled by any decision of our own courts. In *Butt* v. *Colbert*, 24 Texas, 355, the question was raised, but was not decided further than to say that Butt had not shown a right to establish a ferry across Red River. In the treaties above referred to, the islands of both the Sabine and Red Rivers are reserved to the United States, but " the use of the waters and the navigation of said rivers on the respective banks shall be common to the inhabitants of both nations." Do not these stipulations place these rivers under the influence and operation of the maritime laws? If so, then the laws of this State could not punish a misdemeanor that may have been committed on the trading-boat of the defendant on the waters of this river. And much less could you punish him for failing to pay taxes claimed to be due the State of Texas for following an occupation on the waters of that river, though that might be taxable if carried on upon the shore.

*W. B. Dunham*, for the State.

CLARK, J. The treaty of 1819 between the United States and Spain, which fixed the Rio Roxo of Nachitoches, or Red River, as one of the boundaries between the two nations, is silent as to which bank of said stream should constitute the boundary; which silence is of controlling significance when considered in connection with another provision in said treaty, fixing the Sabine River as a part of the western boundary of the former nation. With reference to the last-named river, it was stipulated that the line should begin at the mouth of the Sabine, in the sea, " continuing north along the western bank of that river; " but with reference to Red River as a part of the boundary, it was stipulated that the line, after striking that stream, should follow its course westward to

the degree of longitude 100 west from London and 23 from Washington. 8 Stats. at Large, 254–256. The general rule, therefore, that the mere designation of a river as a boundary, in the absence of further description, means the channel or middle of the stream, must obtain, and it must be held that the jurisdiction of Texas extends at least to the middle of Red River. *Handly* v. *Anthony*, 5 Wheat. 374; *McFall* v. *The Commonwealth*, 2 Metc. 394; *Myers* v. *Perry*, 1 La. An. 372; *Mahler* v. *Transportation Co.*, 35 N. Y. 352; *Morgan* v. *Reading*, 3 Smed. & M. 366; *The State* v. *Dunnell*, 3 R. I. 127; *The People* v. *Wilson*, 3 Park. Cr. 199. The same rule might obtain by reason of the uncertainty which may attend the respective dates of occupation by two separate nations of the territory on either bank of Red River. Vattel's L. N. 120.

In the charge of the court the jury were instructed to acquit in case they should find that, at the time the liquors were sold, the boat of defendant was north of the centre of said river. They found to a contrary effect, and we are not prepared to say that such finding was without evidence to support it.

The charge of the court was not excepted to on trial, and in the absence of such action every presumption is usually indulged in favor of its correctness and applicability. This rule, however, does not apply in case the court misdirects the jury as to the penalty of an offence. *Allen* v. *The State*, 7 Texas Ct. App. 298; *Haynes* v. *The State*, 2 Texas Ct. App. 84. The exact penalty in prosecutions of this character not being fixed by general law, but susceptible of variation according to the discretion of County Commissioners' Courts, and special legislation pertaining to different counties, it is matter of proof before the jury, and it is incumbent upon the prosecution to allege and prove the exact levy. It is true, the court is required to instruct the jury as to the law of the case, and the law fixes the penalty for pursuing a taxable occupation without paying the license-

tax, at not less than the amount of such tax and not more than double that sum; but without evidence as to the amount levied in the particular county, the jury are furnished no basis for an intelligent finding. The levy of a county occupation-tax is not deemed by us a matter of judicial knowledge, and we are of opinion that the practice above indicated is the safer rule to prescribe.

Because it is not made to appear to us that the proper penalty for the offence was found by the jury, the judgment is reversed and the cause remanded

*Reversed and remanded.*