## VIOLATION OE LOCAL OPTION LAW ON THE OHIO RIVER.

Circuit Court of Columbiana County.

STATE OF OHIO V. WILLIAM SAVORS.*

Decided, October Term, 1911.

*Criminal Law—Jurisdiction Over Offenses Committed on the Ohio River—Sale of Intoxicating Liquors Opposite a Dry Municipality Beyond Low Water Mark.*

1. The state of Ohio has criminal jurisdiction of offenses committed beyond low water mark on the Ohio river, opposite the boundary of the state of Ohio.

2. It is a violation of Section 4364-20b of the Revised Statutes of the state of Ohio to sell intoxicating liquors, as a beverage, on a boat anchored in the Ohio river opposite the shore of a municipality of this state, with a passageway for persons to and from the bank of said river in said municipality to said boat, after a majority of the voters of the municipality had voted to prohibit the sale of intoxicating liquors therein.

*L. P. Metzger*, for plaintiff in error.
*H. E. Grosshans*, contra.

POLLOCK, J.; NORRIS, J., concurs; METCALFE, J., dissents in a separate opinion.

East Liverpool is a municipal corporation in this county, and its southeastern boundary extends some distance along the Ohio river.

Under favor of Section 4364-20a, *et seq.*, of the Revised Statutes, the electors of this municipal corporation voted in favor of prohibiting the sale of intoxicating liquors as a beverage. While the sale of intoxicating liquors was prohibited in East Liverpool under this act, William Savors, the plaintiff in error, anchored a boat in the Ohio river opposite the boundary of this municipality, and beyond low water mark. He then constructed

* Reversing *Savors* v. *State*, 8 N.P.(N.S.), 228.

a passage-way for persons to pass to the boat from the bank of the river, within the corporate limits of East Liverpool, and was engaged in selling intoxicating liquors as a beverage on this boat.

An affidavit was filed before the mayor of East Liverpool charging plaintiff in error with a violation of the municipal local option laws of this state, by selling intoxicating liquors within this municipal corporation. He was arrested, tried and convicted. From the judgment of the mayor error was prosecuted to the court of common pleas, resulting in a reversal of the judgment of the mayor, for the reason that the sales were not made within the municipal corporation. The state of Ohio prosecutes error to this court, seeking to reverse the judgment of the common pleas court and to affirm that of the mayor.

Two questions are urged in this court: First, were these sales made within the jurisdiction of the state of Ohio? Second, are sales of intoxicating liquors, on the Ohio river opposite the shore of a municipal corporation of this state, a violation of the municipal local option law?

In 1787 Virginia granted to the United States the Northwestern Territory, she conveyed the territory "situate, lying and being to the northwest side of the river Ohio."

Afterwards, in 1802, the state of Ohio was formed from a part of this territory.

No question now exists but what Virginia, by this grant, conveyed to low water mark on the Ohio side of the river (*Handley's Lessee* v. *Anthony*, 5 Wheaton, 374), limiting the territorial boundary of the state of Ohio, where it borders on the Ohio river, to low water mark on the northwest side of the river.

Afterwards by the act known as the "Virginia Compact" of 1789, which proposed the creation of the state of Kentucky, it was provided that:

"The use and navigation of the Ohio river, so far as the territory of the proposed state, or the territory which shall remain within the limits of this commonwealth lies thereon, shall be free and common to the citizens of the United States, and the respective jurisdictions of this commonwealth and of the proposed states on the river as aforesaid, shall be concurrent only

with the states which may possess the opposite shores of the said river." 13 Hening, St. L., 17.

"This compact, by the sanction of Congress, has become a law of the Union. What further legislation can be desired for judicial action?" *Penna.* v. *Wheeling & B. Bridge Co.,* 13 Howard, 518-566.

Whether or not by this compact the state of Ohio was given authority to enforce her laws on the Ohio river beyond low water mark, has never been determined by the Supreme Court of this state. In the case of *State* v. *Stevens et al,* 2 Western L. J., 66, the common pleas court of this county held "that the state of Ohio had criminal jurisdiction on the Ohio river below low water mark."

This case went to the Supreme Court and was reversed on other grounds, but the jurisdiction on the Ohio river was not considered. *Stevens et al* v. *State of Ohio,* 14 Ohio, 386.

This compact, and similar provisions, have been a fruitful source of litigation in other jurisdictions. The Supreme Court of Indiana, after referring to this compact, say:

"A state has jurisdiction to try and punish offenses against its Sunday laws committed by persons engaged in carrying passengers over navigable waters of the United States, lying along its borders, between different points within its territory." *Dugan* v. *State,* 9 L. R. A., 321.

In the case of *Wedding* v. *Nieyler,* 192 U. S., 573 (48 Law Ed., 570), the Supreme Court of the United States say:

"Jurisdiction is acquired by an Indiana court by service of process on the Ohio river, on the Kentucky side of the low water mark on the Indiana shore, in view of the conditions contained in the Virginia compact of 1798."

Mr. Justice Holmes in the opinion in this case, says:

"Concurrent jurisdiction, properly so-called, on rivers, is familiar to our legislation, and means the jurisdiction of two powers over one and the same place."

The jurisdiction of a state is the sovereign authority to make and the power to execute laws. *Arnold* v. *Shields,* 5 Dana, 18-

22 (52 Am. Dec., 669-673); *Sanders v. St. Louis & N. O. Anchor Line,* 97 Missouri, 26 (10 S. W., 593).

Persons, while on the waters of the Ohio river flowing along the boundaries of this state, are amenable to our laws, and the courts of this state have jurisdiction to punish for crimes committed on the waters of the Ohio river.

The remaining question, then, is the construction of the municipal local option act. When the boundary line of a municipal corporation is on the Ohio river, does this law include sales on the river opposite a municipality in which the sale of intoxicating liquors is prohibited?

Section 4364-20*b* of the Revised Statutes provides:

"If a majority of the votes cast at such election shall be in favor of prohibiting the sale of intoxicating liquors as a beverage, then from and after thirty days from the date of holding said election it shall be unlawful for any person, personally or by agent, within the limits of such municipal corporation, to sell   *   *   *   intoxicating liquors."

This is one of the statute laws of the state of Ohio, differing from the other laws of the state only in requiring the approval vote of the electors of the municipal corporation, to infuse life into it. A vote in a municipality in favor of prohibiting the sale of intoxicating liquors therein, puts in force a law of the state of Ohio making it a crime against the state to do any of the things prohibited by that act within the corporate limits.

If the law had applied to all municipal corporations within the state, without requiring a vote of the electors, it would hardly be claimed it did not include sales on the Ohio river opposite municipalities, just the same as other laws of the state. But the violation of this law within the municipality of East Liverpool was a crime against the state of Ohio, just the same as the violation of any of her criminal statutes.

It is insisted that the sale made by plaintiff in error was not made within the corporate limits of East Liverpool, but on the waters of the Ohio river.

An act that is a crime within the territorial limits of the state bordering on the Ohio river, is a crime if committed on the

river; and the state has power to enforce her laws on the Ohio river just the same as if the criminal act had been committed on the shore opposite that point.

No person can be convicted of a crime except in the county where the offense was committed, yet a crime committed on the Ohio river is punishable in the county bordering upon the river opposite the place where the act was committed. The jurisdictional limits of the county extend over the river to enforce the laws on the river, just the same as on the land. If this is true where the law is in force along the entire boundary of the county, does it not apply where the law is only in force along a part of that boundary? Conviction can be had for a violation of this municipal local option law in any court having jurisdiction of such offenses within the county where the municipality is situated.

It is claimed that the sale of intoxicating liquors made under this statute is only prohibited "within the limits of such municipal corporation." This provision places no greater limitation upon the jurisdiction of the state to enforce its laws than the statute requiring all criminal cases to be tried in the county where the offense was committed.

Both the county and municipal corporations are political divisions of the state; and if the jurisdiction of one, when it is bounded by the river, extends across the river to punish offenses against the law, no good reason can be given for limiting the other to the territorial boundaries of the state.

The object of the Virginia compact was, no doubt, the protection of the citizens living along the river from crimes committed on this public highway against the laws of their state. The circumstances in this case prove the wisdom of that compact. Here the accused had permanently anchored his boat in the river opposite this municipality, and on the banks of the river, within its territorial limits, constructed a means of access to his boat, and then proceeded to violate the criminal laws of this state then in force on the shore of the river opposite.

Because this law was limited to only a part of the boundary of the state on the Ohio river, would not tend to deprive it of

any of the soverign power of the state. To limit the application of this law to the territorial limits of the state, under the circumstances of this case, would make the Ohio river a sanctuary for the violation of this law.

For these reasons the judgment of the common pleas court will be reversed, and that of the mayor affirmed.

METCALFE, J. (dissenting).

Finding myself unable to agree with my brethren in the judgment rendered in this case, I have thought best to state briefly my reasons for such disagreement.

I do not question but that the jurisdiction of the state of Ohio extends over the Ohio river for the service of summons in civil cases, and for the punishment of offenses which may be committed upon that river. In fact, I think the decisions upon those questions settle them beyond controversy. Neither do I question that the jurisdiction of every county in the state bordering on the Ohio river extends to crimes and offenses committed on the river, so that if a crime is committed upon the Ohio river within the lines of a county extended across the river, the jurisdiction of that county extends to that crime. But does it follow that because the state has jurisdiction for certain purposes over the Ohio river that a municipality bordering upon the river, the boundary line of which is low water mark, has jurisdiction over the river opposite the limits of such municipality, and confessedly outside of such limits? I am compelled to think that it does not. It is said very truly that a county is a political subdivision of the state. It is the unit through which the state acts in putting its legal machinery in operation.

An act is not punishable as a crime within the county of Columbiana because the people of that county have declared it shall be so, but because a general law of the state has so declared. It is punishable as a crime because it is against the laws of the state of Ohio and the county wherein the act is committed has jurisdiction of the offense. That, however, is not true of an act punishable by a municipal ordinance. Of course, the people

within a municipality have to obey the laws of the state just the same as the people outside thereof; but a municipality is not a political subdivision of the state. It has nothing whatever to do with the execution of the state laws except in some instances where the authority to execute those laws is specially delegated. A municipal corporation is purely a creature of the law. It can not exercise a single power unless that power is expressly delegated to it by the Legislature of the state, and such powers incident to those expressly delegated as may be necessary to carry them into execution. Being a creature of the law, a corporation exercising only delegated powers, and not a political subdivision of the state, can it be said that when the Legislature delegates to a municipality the power to pass an ordinance making a certain act an offense within the limits of that corporation, that the authority of the corporation by virtue of that ordinance extends and operates beyond the limits of that corporation for any purpose whatever unless the power delegated permits an extra-territorial operation? It is conceded that in no case do the ordinances and laws of a municipality have an extraterritorial effect unless one of the boundaries of the municipality is the Ohio river. The city of Lisbon is not bounded by a navigable river. It could not be contended for a moment that for any purpose an ordinance passed by the council of this city would operate beyond the limits of the city. Why should such authority operate beyond the limits of the municipality simply because one of its boundaries happens to be a navigable river? Have its powers been enlarged in any way by the fact that one of its boundary lines is low water mark of the Ohio river? The power ceases to operate outside the municipal limits on dry land but continues to operate on the water. So far as the laws of the state are concerned, there is no distinction between dry land and water. They operate equally upon both, and the jurisdiction of the state or county to punish an act committed on the river extends to that offense because the jurisdiction of the state extends to every part alike, whether it is land or water.

But it is said that the offense with which the defendant is charged in this case is made punishable by a law of the state

and not by a municipal ordinance. A law is passed by the Legislature which delegates to the people of the municipality a right to vote upon the question whether intoxicating liquors shall or shall not be sold within its boundaries. Therefore, it is said there is a distinction between this particular law and a municipal ordinance. But it appears to me to be a distinction without a difference. It is only by virtue of a general law that the authorities of a municipal corporation can act at all. It is by force of a general law delegating power to a municipality that an ordinance can be passed by the council, or other law-making power of the municipality. Laws have been passed authorizing the council of municipalities to prohibit the sale of intoxicating liquors, other laws have been passed authorizing the prohibition of the liquor traffic within the municipality by a vote of the people. In both cases the power to prohibit such sales is purely a delegated power. When the people of a municipality have voted upon that question against the sale of intoxicating liquors then "within the limits of such municipality" the sale or keeping a place for the sale of intoxicating liquors is prohibited. Therefore the sale having been prohibited within the limits is not by that vote prohibited without the limits, and no power exists in the municipality to punish an act not committed within its boundaries.