STATE OF GEORGIA *v.* STATE OF SOUTH CAROLINA.

IN EQUITY.

No. 16, Original. Argued January 4, 5, 1922.—Decided January 30, 1922.

1. Under the Beaufort Convention of April 28, 1787, defining the boundary between South Carolina and Georgia on the Savannah River and tributaries, reserving islands to Georgia,—*Held:* (*a*) Where there are no islands in the boundary rivers, the line is on the water midway between the main banks when the water is at ordinary stage. P. 521. (*b*) Where there are islands, it is midway between the island bank and the South Carolina shore, with the water at ordinary stage. P. 522. (*c*) Islands in the Chattooga River, the "most northerly branch or stream" of the Tugaloo, apparently not known as the Chattooga at the time of the Convention, are reserved to Georgia as completely as those in the Savannah and Tugaloo proper. P. 522.
2. The general rule is that where a river, navigable or nonnavigable, is the boundary between two States, and the navigable channel is not involved, in the absence of convention or controlling circumstances to the contrary, each takes to the middle of the stream. P. 521.

3. The location of the boundary under the above convention, *held* unaffected by the Thalweg or Main Navigable Channel doctrine, in view of the provision that each State shall have equal rights of navigation on the streams.  P. 521.

ORIGINAL suit to define a boundary between States.

*Mr. Geo. M. Napier,* Attorney General of the State of Georgia, and *Mr. Thos. F. Green,* with whom *Mr. Seward M. Smith* was on the brief, for complainant.

*Mr. S. M. Wolfe,* Attorney General of the State of South Carolina, and *Mr. A. M. Lumpkin* for defendant.

MR. JUSTICE CLARKE delivered the opinion of the court.

The parties to this case agree: That the boundary line between the States of Georgia and South Carolina is the river Savannah from the sea to the junction of the Seneca (formerly Keowee) and the Tugaloo (formerly spelled Tugalo) rivers; that it continues thence northwesterly by the Tugaloo river to the junction of the Tallulah and Chattooga rivers, and thence by the Chattooga river to the 35th parallel of north latitude, which is the south boundary of North Carolina.  But they differ as to the location of the boundary line in these three rivers, and the State of Georgia, by original bill, prays that the controversy be settled by a decree of this court.

The State of Georgia contends: That, where there are no islands in the rivers, the line between the two States is midway between the river banks, when the water is at its ordinary stage; that, where there are islands, this line deflects and follows the middle line of the most northerly branch or stream, where it runs between any island and the South Carolina shore; and it claims jurisdiction over all islands in all three boundary rivers.

South Carolina, on the other hand, admits in its answer that where there are no islands the line between the States is the " middle thread of the stream where the rivers flow

in one stream or volume," but at the bar and in its brief
it is argued, strenuously, that the true line is the low water
mark on the southerly or Georgia bank of each river.
It also claims that where there are islands the line is at
low water mark on the southerly bank of the most north-
erly stream or branch of the river, and, while conceding
all the islands in the rivers Savannah and Tugaloo to
Georgia, it denies the jurisdiction of that State over those
in the Chattooga river.

Thus it will be seen that the controversy is limited to
the determination: (1) Whether the boundary line shall
be located midway between the banks of each river where
there are no islands, or at low water mark on the Georgia
shore; (2) Whether the location of the boundary line
where there are islands in the rivers, is in the middle of the
stream running between any island and the South Caro-
lina shore, or at low water mark on the southern or island
shore of such stream; and (3) Whether any islands there
may be in the Chattooga river are within the territorial
jurisdiction of Georgia.

The taxation of dams and hydro-electric plants, already
constructed and hereafter to be constructed, in the bound-
ary rivers, renders the decision of the questions involved
of importance to the two States.

It is not necessary to recite or discuss the historic origin
of the titles which the two contending States have to the
territory comprised within their present boundaries, for
it is stipulated that the rights of the parties are to be
determined by the construction of the terms of a written
convention or treaty, entered into on April 28, 1787, by
commissioners appointed by the two States. This con-
vention, entered into pursuant to the provisions of the
Articles of Confederation of 1778, under which the States
were then united for the purposes of government, having
been executed at Beaufort, South Carolina, is designated
in the record as the Beaufort Convention.

Only two articles of this Convention need be considered, and they are as follows:

"Art. I. The most northern branch or stream of the river Savannah, from the sea or mouth of such stream to the fork or confluence of the rivers now called Tugalo and Keowee; and from thence, the most northern branch or stream of the said river Tugalo, till it intersects the northern boundary line of South Carolina, if the said branch or stream of Tugalo extends so far north, reserving all the islands in the said rivers Savannah and Tugalo to Georgia; but if the head spring or source of any branch or stream of the said river Tugalo does not extend to the north boundary line of South Carolina, then a west line to the Mississippi, to be drawn from the head spring or source of the said branch or stream of Tugalo river, which extends to the highest northern latitude, shall for ever hereafter form the separation limits and boundary between the states of South Carolina and Georgia.

"Art. II. The navigation of the river Savannah at and from the bar and mouth, along the northeast side of Cockspur island, and up the direct course of the main northern channel along the north side of Hutchinson's Island, opposite the town of Savannah, to the upper end of said island, and from thence up the bed or principal stream of the said river to the confluence of the rivers Tugalo and Keowee, and from the confluence up the channel of the most northern stream of Tugalo river to its source, and back again by the same channel to the Atlantic Ocean— is hereby declared to be henceforth equally free to the citizens of both states, and exempt from all duties, tolls, hinderance, interruption, and molestation whatsoever, attempted to be enforced by one state on the citizens of another; and all the rest of the river Savannah to the southward of the foregoing description, is acknowledged to be the exclusive right of the state of Georgia."

First. As to the location of the line where there are no islands. While the admission quoted from the answer of

South Carolina would be sufficient to justify locating the line, where there are no islands, in the "middle thread of the stream where the rivers flow in one stream or volume," nevertheless the earnestness with which the contention for the low water mark on the Georgia shore is argued constrains us to consider the question further.

That the admission in the answer was not made inadvertently is conclusively shown by the fact that the General Assembly of South Carolina, in 1852, by resolution, appearing in the record, declared: That the Beaufort Convention defines the boundary between the two States; that the terms of the first article of that convention "construed by the undisputed principles of international and common law, fix, as the limit of the respective jurisdictions of the two States, . . . the thread or middle of the most northern branch or stream of the rivers Savannah and Tugaloo, where these rivers have more than one branch or stream, and the thread or middle of these rivers where there is but one branch or stream," and that the courts, the legislature and the departments of the government of the State have uniformly given to and acquiesced in this construction of the Convention.

A like declaration appears in the "Code of the Statute Law of South Carolina," adopted in 1861, in which the line where there are no islands is described as located at the " middle thread of the stream where the rivers flow in one stream or volume."

With this construction of Article I of the Convention, by the courts, general assembly and heads of departments of South Carolina, we fully agree.

The express reservation of the islands to Georgia and the placing of the boundary line in the most northerly branch of the Savannah and then of the Tugaloo river up to the " northern boundary of South Carolina," makes it clear that where there are islands in the river the line must be between them and the South Carolina shore, for

otherwise the Georgia islands would be within the State of South Carolina.  While it is true that the line, where there are no islands, is not specifically located by the Convention at the " thread or middle of the stream," neither is it, in terms, placed at the low water mark on the Georgia bank.  However, the general rule is that where a river, navigable or non-navigable, is the boundary between two States, and the navigable channel is not involved, in the absence of convention or controlling circumstances to the contrary, each takes to the middle of the stream (*Handly's Lessee* v. *Anthony,* 5 Wheat. 374, 379; Hall, International Law, 6th ed., 123; Creasy First Platform of International Law, § 231), and therefore in this case the conclusion of the General Assembly of South Carolina in 1852 and in 1861, as we have quoted it, was clearly the correct one.

We conclude that where, in any of the boundary rivers here involved, there are no islands the location of the boundary line between the two States is the thread of the river—the middle line of the stream—regardless of the channel of navigation, the precise location to be determined when the water is at its ordinary stage, " neither swollen by freshets nor shrunk by drought."  *Trustees of Hopkins Academy* v. *Dickinson,* 9 Cush. 544, 552.

Second. As to the location of the boundary line "where the most northern branch or stream " flows between an island or islands and the South Carolina shore.

Obviously such a stream may be wide and deep and may contain the navigable channel of the river, or it may be narrow and shallow and insignificant in comparison with the adjacent parts of the river.  But such variety of conditions cannot affect the location of the boundary line in this case, because, by Article II of the Convention, equal and unrestricted right to navigate the boundary rivers is secured to the citizens of each State, irrespective of the location of the navigable channel with respect to the boundary line.

Thus, Article II takes out of the case any influence which the Thalweg or Main Navigable Channel Doctrine (*Iowa* v. *Illinois,* 147 U. S. 1; *Arkansas* v. *Tennessee,* 246 U. S. 158, 169, 170, 171) might otherwise have had upon the interpretation to be placed on Article I, by which the location of the line must be determined, and leaves the uncomplicated case of a boundary stream between two States quite unaffected by other considerations.

Thus again we have the case of a stream for a boundary between two States and with the precise location of the boundary line unaffected by the Thalweg Doctrine, or by other circumstances, and again the rule must be applied that the division line is midway between the banks of the stream,—here between the island bank on the one side and the South Carolina bank on the other,—its precise position to be determined when the water is at its ordinary stage.

Third. As to the islands in the Chattooga River.

Article I, as quoted, makes it plain that the commissioners executing the Convention of Beaufort intended to provide that the most northern branch of the river which they knew as the Tugaloo, as far northerly as its intersection with the northern boundary of South Carolina, if it extended so far north, should be the boundary line between the two States. It is now known that the most northern branch of that river extends as far north as the south boundary line of North Carolina (the 35th parallel of north latitude) and beyond that the controversy in this case does not extend. The fact that this "most northerly branch or stream of the Tugalo" has come to be known as the Chattooga in that part of it northerly of the junction of the rivers now known as the Tullulah and Chattooga, neither of which appears by this record to have been known or named at the time the Convention was executed, cannot change the rights of the parties to the Convention, in the islands in that part of

the stream.   The Chattooga is but the extension of the Tugaloo,—the northern branch or stream of that river— and the fact that it is called Chattooga cannot affect the jurisdiction of Georgia over "all the islands in the said rivers Savannah and Tugalo" to which State they are specifically reserved by the Convention.   The islands in the Chattooga River, as well as those in the Savannah and Tugaloo, were reserved to. Georgia by the Convention.

Thus we conclude: (1) Where there are no islands in the boundary rivers the location of the line between the two States is on the water midway between the main banks of the river when the water is at ordinary stage; (2) Where there are islands the line is midway between the island bank and the South Carolina shore when the water is at ordinary stage; and (3) That islands in the Chattooga River are reserved to Georgia as completely as are those in the Savannah or Tugaloo rivers.

Counsel may present a decree, within thirty days, to carry into effect these conclusions of the court, with or without a commission to locate and monument the boundary line as they may be advised.   The costs of suit will be equally divided between the two States.