UNITED STATES of America,
Appellant,

v.

450 ACRES OF LAND, MORE OR LESS, KNOWN AS BARNWELL ISLAND, Situate in CHATHAM COUNTY, GEORGIA, and E. B. Pinckney, et al., Appellees.

No. 14990.

United States Court of Appeals, Fifth Circuit.

March 22, 1955.

Rehearing Denied April 19, 1955.

Edmund B. Clark, John F. Cotter, Attys., Dept. of Justice, Washington, D. C., William C. Calhoun, U. S. Atty., Savannah, Ga., Perry W. Morton, Asst. Atty. Gen., for appellant.

Thomas H. Gignilliat, Savannah, Ga., Henry H. Edens, Columbia, S. C., Clyde A. Elzroth, Hampton, S. C., Eugene Cook, Atty. Gen. of Georgia, Lamar W. Sizemore, Robert H. Hall, Asst. Attys. Gen. of Georgia, E. Freeman Leverett, Atty., Dept. of Law, Atlanta, Ga., Randolph Murdaugh, Hampton, S. C., for appellees.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from an order of the District Court for the Southern District of Georgia dismissing a condemnation proceeding which had been brought by the United States to acquire a perpetual and assignable easement to enter upon, occupy, and use certain lands known as Barnwell Island for the deposit of spoil

or other matters excavated in the construction, improvement and maintenance of Savannah Harbor.

The tract or parcel of land sought to be condemned was described as lying and being in Chatham County, Georgia. Among those listed in the complaint as having or claiming an interest in the property were E. B. Pinckney, the States of South Carolina and Georgia, the Sheriff of Beaufort County, South Carolina, the Forfeited Land Commission of that county and the Sheriff of Chatham County, Georgia. Of these named, Pinckney was the only one to enter an appearance and he moved to dismiss the complaint on the ground that the court lacked jurisdiction by reason of the fact that the land involved was located in the State of South Carolina.

At the hearing which was had on the motion to dismiss, it was admitted that Barnwell Island was originally an island in the Savannah River and that for many years it has been connected with the South Carolina shore. Pinckney, who claimed that he was the owner in fee simple of the property, testified that he had paid taxes thereon for the past ten years in Beaufort County, South Carolina and had never paid any taxes to the taxing authorities of the State of Georgia. The Government, in turn, introduced in evidence a copy of the Beaufort Convention of 1787 whereby all islands in the Savannah River were reserved to the State of Georgia. In addition, the Government also introduced certain maps in evidence which substantiated their contention. When the evidence was closed the court concluded the hearing with an expression of its views [1] and thereafter and in keeping therewith it entered a formal order dismissing the Government's complaint.

Following the entry of the order of dismissal the Government moved for a new trial and the State of Georgia applied for leave to intervene as a party to the proceedings on the grounds (1) that title to the islands in the Savannah River was confirmed in the State of Georgia in 1789 by the terms of the Beaufort Convention, and (2) that the State had not since that time, granted, ceded, sold, nor otherwise disposed of said lands. The intervention was allowed and the motion for a new trial was set down for hearing. After several continuances and on the day when the motion was finally scheduled to be heard, and pursuant to suggestions made by the court, it was agreed by and between the United States and E. B. Pinckney that for the purpose of the motion for new trial and in lieu of presenting witnesses that the court should consider the stipulations agreed upon [2] as additional evidence on the question of jurisdiction. Thereafter the court rendered a judgment sustaining the order under review and subsequently it entered a formal order denying the motion for a new trial.

In its "judgment" which was in the form of an opinion the court below said:

"The Court is of the opinion that the State of Georgia did acquire title to this property at the Beaufort Convention but holds that the principle of prescription and acquiescence is applicable in determining the boundary between the States and from evidence submitted including the affidavit of the Sheriff of the County, where the land is located, which is attached to stipulation of Counsel in this case, and which is hereto attached, which is uncontradicted, this property is in the State of South Carolina, and the Court where this land is located has juris-

1. "The Court: Well, I think I have got it in my mind. I am going back to Georgia law where a man has been in possession of property for seven years under an adverse claim and stays in possession and cultivates it. I still don't see the necessity of this case. The government is go-

ing to take the property and pay for it, whether it is in Georgia or in South Carolina. I am going to decide with South Carolina. You can take your order."

2. The State-intervenor was not a party to this agreement.

diction to determine the market value of this property."

The trial court thus recognized that title to Barnwell Island was confirmed in the State of Georgia by the terms of the Beaufort Convention. But, on the authority of State of Arkansas v. Tennessee, 310 U.S. 563, 60 S.Ct. 1026, 84 L.Ed. 1362, it justified dismissal of the proceeding on the ground that the land in question should now be deemed to be within the boundaries of South Carolina by virtue of prescription and acquiescence on the part of Georgia in the exercise by South Carolina of dominion and jurisdiction over the described land.

■ In State of Arkansas v. Tennessee, supra, upon which the court below relied, the State of Arkansas brought suit against the State of Tennessee seeking a decree determining the true boundary between the States at certain points and confirming the jurisdition and sovereignty of the State of Arkansas over the described property. Tennessee answered, contesting the claims of Arkansas and the issues were referred to a Special Master. In his report the Master found that land which had been on the Arkansas side of the Mississippi River was cut off by a sudden change in the River's course in 1821, and had become attached to the Tennessee side. Rejecting Arkansas' claim to the land, the Supreme Court approved the Master's finding that Tennessee had continuously exercised dominion and jurisdiction over that area from the year 1826 to the time of the bringing of the present suit and that the record showed the acquiescence of Arkansas and this assertion of dominion by Tennessee. Without undertaking to set out the facts in greater detail we deem it sufficient to say that this case is but one of many, such as State of Indiana v. Kentucky, 136 U.S. 479, 510, 10 S.Ct. 1051, 34 L.Ed. 329, and State of Louisiana v. Mississippi, 202 U.S. 1, 53, 26 S.Ct. 408, 50 L.Ed. 913, in which the Supreme Court has applied the universally recognized principle of prescription and acquiescence in determining a disputed boundary between States. The combined effect of these decisions is that when a dispute as to the boundary line between two states arises, the principle of prescription and acquiescence is applicable, and when it appears that there has been long acquiescence in the possession of territory or the exercise of sovereignty, long continued acts which show recognition of a certain line as a boundary line may have controlling effect in the determination of that boundary. It is therefore clear that the principle is applicable in the case of a disputed boundary when, and only when, there is a sufficient basis of fact for its application. And this brings us to a consideration of the only identifiable evidence to which the trial judge referred, the affidavit of the Sheriff of Beaufort County.

The affidavit of the sheriff states that from the time of his induction into office in 1926, until the repeal of the Volstead Act, 27 U.S.C.A. § 1 et seq. he had gone upon the land in search of law violators and had destroyed numerous distilleries and that once in 1932 and again in 1946, he took from the City of Savannah with the assistance of its police, two persons who had committed crimes on Barnwell Island, and delivered them for trial in South Carolina where they were convicted and sentenced to the penitentiary. The affidavit of the sheriff further states that on October 6, 1935, he "went upon this land and seized same, taking exclusive possession in the name of the County of Beaufort and State of South Carolina, upon a warranty of Execution for nonpayment of taxes assessed against same;" that to satisfy the execution the land was sold in February, 1936, to the Forfeited Land Commission of Beaufort County, South Carolina, and that on January 6, 1942, that Commission deeded the land to E. B. Pinckney. This statement in reference to a deed was the only evidence before the court other than Pinckney's own testimony that he had paid taxes on the land, that Pinckney has anything even purporting to be color of title to Barnwell Island. And the only comment of the trial judge

in respect thereto was his statement that he "did take into consideration the laws of South Carolina pertaining to prescription together with the affidavit of the sheriff and E. B. Pinckney, that E. B. Pinckney received a deed to this property in 1936." As to this statement we point out that this record does not contain an affidavit of E. B. Pinckney and according to the sheriff's affidavit, Pinckney received the deed in 1942 and not in 1936.

In examining the record we are impressed by the circumstance that the evidence does not contain either the deed under which Pinckney asserts his title or the deed to the Forfeited Land Commission of South Carolina and in the absence of even the slightest attempt to explain their nonproduction it is certainly reasonable to indulge in the assumption that if either of them had lent support to Pinckney's claim to Barnwell Island that counsel would not have failed to introduce them in evidence. But be that as it may there is one thing that is certain and that is that there is no evidence in this record, including the sheriff's affidavit which is not specific as to description, that the Forfeited Land Commission of South Carolina ever attempted to give Pinckney or anyone else, title to any lands which now or formerly were islands in the Savannah River. The utmost finding the evidence will support is, that claimant Pinckney and the sheriff think it did.

The boundary line between Georgia and South Carolina is not in dispute as between these sovereigns. Neither the State of South Carolina nor any official purporting to act for South Carolina has intervened, become a party, or made any appearance in this proceeding and even if Georgia could lose territory by acquiescence in an assertion of jurisdiction by South Carolina, this record contains nothing of substance to show either acquiescence or assertion. It is true that Georgia did not tax the land but there is nothing to show that this was because the State did not believe that the land was within its jurisdiction. When South Carolina sanctioned the compact it admitted in the most solemn form that the land in controversy was not within her jurisdiction and it is certainly reasonable to assume that Georgia believed it owned the land. Consequently, there was no occasion for it or any of its political subdivisions to impose a tax. On the other hand, South Carolina has not claimed jurisdiction over the land in controversy. It has not been shown that the taxes, for which the land was sold to the Forfeited Land Commission of Beaufort County, and by it to Pinckney, were imposed by the State or applied to the benefit of the State. Of little weight also are the acts of the sheriff and others on which appellee relies as showing that South Carolina asserted dominion and jurisdiction over the tract in question. There is no proof here that Georgia had knowledge of, much less that it acquiesced in, these isolated activities and it is absurd to say that a state has relinquished a right of which it is not aware. Furthermore, there is nothing here to connect the state of South Carolina with these transactions and she does not and cannot claim that she acquired any right by virtue of these activities. Similar actions were so appraised in State of Missouri v. Kentucky, 11 Wall. 395, 402–403, 20 L.Ed. 116.

■ There is, there can be, no doubt that the land here involved is in the State of Georgia. Article 1 of the Beaufort Convention specifically reserved to Georgia all the islands in the Savannah River and the Supreme Court by its decision and decree in State of Georgia v. South Carolina, 257 U.S. 516, 42 S.Ct. 173, 66 L.Ed. 347, Id., 259 U.S. 572, 42 S.Ct. 597, 66 L.Ed. 1069, confirmed that reservation. It follows that the condemnation proceeding was properly brought in the court below, 28 U.S.C. § 1403, and that it was erroneously dismissed for want of jurisdiction.

Reversed and remanded.

(Judge Russell, participated in the hearing and decision of this cause, but died before the opinion was filed.)